Slip Op. 19-124

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TOSÇELIK PROFIL VE SAC ENDÜSTRISI A.Ş. and ERBOSAN ERCIYAS BORU SANAYI VE TICARET A.S., | |
| Plaintiffs, | Before: Leo M. Gordon, Judge |
| v. | Consol. Court No. 17-00255 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| WHEATLAND TUBE CO., | |
| Defendant-Intervenor. | |

**OPINION**

[Commerce's Remand Results sustained.]

Dated: September 20, 2019

David L. Simon, Law Office of David L. Simon of Washington, DC, for Plaintiff Tosçelik Profil ve Sac Endüstrisi A.Ş.

Irene H. Chen, Chen Law Group, LLC of Rockville, MD, for Consolidated Plaintiff Erbosan Erciyas Boru Sanayi ve Ticaret A.S.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, U.S. Department of Justice of Washington, DC, for Defendant United States. With her on brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director. Of counsel was Saad Y. Chalchal, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

Roger B. Schagrin and John W. Bohn, Schagrin Associates of Washington, DC, for Defendant-Intervenor Wheatland Tube Co.

Consol. Court No. 17-00255                                                              Page 2

Gordon, Judge:   This action involves the final results of the 2015 administrative review conducted by the U.S. Department of Commerce ("Commerce") of the countervailing duty ("CVD") order published as Welded Carbon Steel Pipes and Tubes from Turkey, 82 Fed. Reg. 47,479 (Dep't of Commerce Oct. 12, 2017) (final results admin. review) ("Final Results"); see also accompanying Issues and Decision Memorandum, C-489-502,     (Dep't     of     Commerce     Oct.     4,     2017),     available     at https://enforcement.trade.gov/frn/summary/turkey/2017-22069-1.pdf   (last   visited   this date) ("Decision Memorandum").

Before the court are Commerce's Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No. 51-1,[1] filed pursuant to the court's remand order in Tosçelik Profil ve Sac Endüstrisi A.Ş v. United States, 42 CIT ___, 358 F. Supp. 3d 1370 (2019) ("Erbosan I").[2] The court remanded the Final Results for Commerce to address whether Consolidated Plaintiff Erbosan Erciyas Boru Sanayi ve Ticaret A.S.'s ("Erbosan") knowledge of U.S. entries of its circular welded carbon steel pipes and tubes ("subject merchandise") is relevant in determining whether Erbosan may qualify for a no shipment certification. Erbosan I, 42 CIT at ___, 358 F. Supp. 3d at 1376.

---

[1] All citations to the Remand Results, the agency record, and the parties' briefs are to their confidential versions unless otherwise noted.

[2] The court sustained the Final Results as to all issues raised by Tosçelik. See Erbosan I, 42 CIT at ___, 358 F. Supp, 3d at 1376. Tosçelik did not file any comments on the Remand Results. See Tosçelik Notification Regarding Comments on Remand, ECF No. 55.

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930,

as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[3] and 28 U.S.C. § 1581(c) (2012).

## I.       Background

In the administrative review, Erbosan argued that Commerce should rescind the

proceeding pursuant to 19 C.F.R. § 351.213(d)(3) as to Erbosan because it did not have

any reviewable shipments during the period of review ("POR"). See Remand Results at 2;

see also 19 C.F.R. § 351.213(d)(3) ("[Commerce] may rescind an administrative review,

in whole or only with respect to a particular exporter or producer, if [Commerce] concludes

that, during the period covered by the review, there were no entries, exports, or sales of

the subject merchandise, as the case may be."). Commerce denied Erbosan's

no shipment certification based on information received from U.S. Customs and Border

Protection ("CBP") establishing that Erbosan's subject merchandise did, in fact, enter the

United States during the POR. Commerce found that there were reviewable entries of the

subject merchandise that precluded Erbosan from being eligible for a no shipment

certification. Remand Results at 3. As a result, Commerce assigned Erbosan the "non-

selected [CVD] rate" of 6.64%. Id. at 5. Erbosan subsequently appealed Commerce's

determination. See Erbosan I, 42 CIT at ___, 358 F. Supp. 3d at 1375.

The court previously held that Commerce reasonably found that there were

reviewable entries of subject merchandise into the U.S. originating from Erbosan.

However, the court concluded that Commerce failed to address Erbosan's contention that

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

it did not know or have reason to know of any transshipments of subject merchandise to the United States during the POR. See id. 42 CIT at ___, 358 F. Supp. 3d at 1376. Accordingly, the court remanded the action to Commerce to determine whether Erbosan's claimed lack of knowledge is relevant in the CVD context, and more specifically whether knowledge is relevant with respect to Commerce's consideration of a no shipment certification under 19 C.F.R. § 351.213(d)(3). Id. 42 CIT at ___, 358 F. Supp. 3d at 1376.

On remand, Commerce explained that knowledge of U.S. entries on the part of Erbosan "is not a necessary condition" for determining whether Erbosan had reviewable entries during the POR. See Remand Results at 10. Confirming that Erbosan had reviewable entries during the POR, Commerce again refused to rescind the administrative review as to Erbosan and continued to assign Erbosan the "non-selected [CVD] rate" of 6.64%. Id. at 10–11.

In challenging the Remand Results, Erbosan maintains that Commerce must consider Erbosan's apparent lack of knowledge regarding the U.S. entries of subject merchandise in evaluating its eligibility for a no shipment certification. See generally Pl.'s Comments on Final Results of Redetermination Pursuant to Remand, ECF No. 57 ("Pl.'s Cmts."); see also Def.'s Reply to Comments on the Remand Redetermination, ECF No. 60; Def.-Intervenor Wheatland Tube Co.'s Responsive Comments on the Remand Redetermination, ECF No. 59. For the reasons that follow, the court sustains the Remand Results.

## II.      Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has further been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2019). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2019).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–45 (1984) governs judicial review of

Commerce's interpretation of the countervailing duty statute. See United States v. Eurodif S.A., 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

### III.    Discussion

Erbosan challenges the denial of its requested no shipment certification on multiple grounds. It contends that Commerce's finding that Erbosan had reviewable entries of subject merchandise during the POR "despite Erbosan's lack of knowledge that sales to a foreign third party were ultimately shipped to the United States," is "contrary to the plain language and intent of the statute." Pl.'s Cmts. at 4–5 (citing 19 U.S.C. § 1671). Erbosan further argues that Commerce is required to conduct a "pass-through" analysis in making its no shipment certification, and that Commerce must "determine that a person received both a financial contribution and a benefit with regard to the U.S. sales being reviewed." Id. at 6, 9–10. Erbosan lastly maintains that Commerce's Federal Register notices in prior CVD proceedings demonstrate that Commerce has recognized that the knowledge test should be used in the CVD context. See id. at 11 (citing Aluminum Extrusions from the People's Republic of China, 80 Fed. Reg. 77,325, 77,326 (Dep't of Commerce Dec. 14, 2015) (final results and partial rescission of admin rev.) ("Aluminum Extrusions from China"), and Multilayered Wood Flooring from the People's Republic of China, 83 Fed.

Reg. 27,750, 27,751 (Dep't of Commerce June 14, 2018) (final results and partial rescission of admin rev.) ("Wood Flooring from China")).

Erbosan initially contends that 19 U.S.C. § 1671 requires Commerce to consider a respondent's knowledge in determining whether to impose a countervailing duty, including in evaluating a respondent's request for a no shipment certification. Specifically, Erbosan argues that the phrase "likely to be sold" in § 1671(a)(1) connotes that Commerce must use a knowledge test in determining whether to rescind an administrative review under 19 C.F.R. § 351.213(d)(3). Pl.'s Cmts. at 5. Erbosan therefore maintains that Commerce should have granted Erbosan a no shipment certification because its subject merchandise was not knowingly imported, sold, or likely to be sold into the U.S. at the time of its sale. Id.

Erbosan, however, does not explain how § 1671(a)(1)'s use of the phrase "likely to be sold" can be read to require that Commerce use a knowledge test in its no shipment certification analysis. Despite Erbosan's contentions, neither 19 U.S.C. § 1671(a)(1) nor 19 C.F.R. § 351.213(d)(3) unambiguously require knowledge. Moreover, Erbosan does not provide any legal basis for its argument that Commerce must use the knowledge test in considering a respondent's eligibility for a no shipment certification. Contrary to Erbosan's naked contentions, Commerce provides a detailed explanation as to why knowledge is relevant in its application of the antidumping ("AD") duty statute and why knowledge is likewise not relevant in the CVD context. See Remand Results at 7–10. Commerce specifically notes that "Erbosan cites to 19 CFR 351.213, but has not identified any specific language in that regulation to support its contention with respect to CVD

administrative reviews." Remand Results at 14. Given the lack of reference to a

producer's knowledge in either the CVD statute, or in the specific regulation at issue

(19 C.F.R. § 351.213(d)(3)), Commerce reasonably concludes that the CVD statute and

the applicable regulation do not require Commerce to use a knowledge test in evaluating

Erbosan's no shipment certification request. See id. Commerce further explained that

unlike its determinations in the AD duty context, knowledge is not relevant because the

focus in the CVD context is "on imports of merchandise that benefit from countervailable

subsidies." Id. at 15. Commerce therefore reasonably concluded that "[t]he knowledge

test is inapplicable in the context of CVD proceedings because Commerce does not

examine a producer's selling practices and, thus, has no need to determine the identity

of the price discriminator in such proceedings." Id.

Erbosan next contends that Commerce is required to conduct a "pass-through

analysis" to determine whether the subsidy granted to Erbosan as a producer of subject

merchandise "passed through" to a third-party shipper/reseller. See Pl.'s Cmts. at 6–10.

Erbosan relies on 19 U.S.C. § 1677(5)(B) (defining a countervailable subsidy), and the

decisions in Delverde, SrL v. United States, 202 F.3d 1360 (Fed. Cir. 2000) and Allegheny

Ludlum Corp. v. United States, 26 CIT 1, 182 F. Supp. 3d 1357 (2002), for the proposition

that, absent a showing of knowledge on the part of the respondent, Commerce is required

to presume that the countervailable subsidy is "deemed to be extinguished" after a sale

by the subsidized exporter/producer to a third-party. Id.

Erbosan's reliance on Delverde and Allegheny Ludlum Corp. is misplaced.

Allegheny Ludlum Corp. dealt with whether non-recurring financial benefits, received by

a previously public entity, survive privatization, and whether the private new owners are

subject to countervailing duties on products they export to the United States. See

Allegheny Ludlum Corp., 26 CIT at 4, 182 F. Supp. 3d at 1361. Delverde focused on the

question of whether a former owner's receipt of subsidies could be presumed to "pass

through" a transfer of corporate assets and be attributed to a new corporate owner. See

Delverde, 202 F.3d at 1363–64. Commerce's denial of Erbosan's no shipment

certification is distinguishable from the different issues addressed in Delverde and

Allegheny Ludlum Corp. As Commerce explained, those cases involved "[a]ttribution

issues stemming from changes in ownership," and they are "distinct from whether a

particular producer had reviewable entries during the POR." See Remand Results at 16.

Erbosan also relies on 19 U.S.C. § 1677(5)(B) to argue that if a subsidized

producer/exporter lacks knowledge that subject merchandise will enter the United States,

Commerce must deem the countervailable subsidy extinguished once the subject

merchandise is sold to a third party, absent a pass-through analysis. See Pl.'s Cmts. at

6, 13. Section 1677(5)(B) states in relevant part:

> (B) Subsidy described. A subsidy is described in this
> paragraph in the case in which an authority--
>     (i) provides a financial contribution,
>     (ii) provides any form of income or price support within
> the meaning of Article XVI of the GATT 1994, or
>     (iii) makes a payment to a funding mechanism to
> provide a financial contribution, or entrusts or directs a private
> entity to make a financial contribution, if providing the
> contribution would normally be vested in the government and
> the practice does not differ in substance from practices
> normally followed by governments.

19. U.S.C. § 1677(5)(B). This language does not refer to a "pass-through analysis."

Erbosan nevertheless maintains that if it did not know that the subject merchandise was

ultimately destined for the United States, "Commerce must presume that subsidies were

extinguished upon the arms-length sale to the independent entity." Pl.'s Cmts. at 9

(emphasis added).

> Commerce reasonably addressed this argument:

> > Erbosan again misinterprets how Commerce treats merchandise exported to the United States by non-producing entities in CVD proceedings. Contrary to Erbosan's argument, a pass-through analysis would be inapplicable to entries of subject merchandise produced by Erbosan and exported by a trading company. Commerce's regulation at 19 CFR 351.525(c) provides that "benefits from subsidies provided to a trading company which exports subject merchandise shall be cumulated with benefits from subsidies provided to the firm which is producing subject merchandise that is sold through the trading company, regardless of whether the trading company and the producing firm are affiliated" (emphasis added). As clearly stated, subject merchandise exported by the trading company is deemed to benefit from the subsidies provided to both the trading company and the producer of the merchandise.

Remand Results at 16. Erbosan fails to explain how its lack of knowledge of a third-party's

intention to sell subject merchandise in the United States somehow extinguishes the

competitive benefit Erbosan obtained from the merchandise's subsidization. Accordingly,

the court concludes that Erbosan's reliance on § 1677(5)(B), Delverde, and Allegheny

Ludlum Corp. is misplaced. Neither the statute, nor Delverde, nor Allegheny Ludlum Corp.

require Commerce to make such presumptions or to conduct a "pass-through" analysis

on transactions between a producer/exporter of subsidized merchandise and a third-party shipper/reseller.

Alternatively, Erbosan appears to argue that even if it <u>did have knowledge</u> of any transshipments of its subject merchandise, Commerce was somehow <u>still</u> obligated to perform a pass-through analysis to determine whether the subsidy passed through to the third-party. <u>See</u> Pl.'s Cmts. at 5 ("Even if Erbosan had knowledge of the U.S. destination of its products, a pass-through analysis is nonetheless required…."); <u>id.</u> at 9 ("If Erbosan did have knowledge that the shipments were ultimately destined for the United States, then Commerce must take the further step of conducting a pass-through analysis…."). To the extent that Erbosan is now suggesting that it should qualify for a no shipment certification even if it knowingly made sales of subject merchandise to the United States during the POR, Erbosan has waived this argument. <u>See</u> <u>Dorbest Ltd. v. United States</u>, 604 F.3d 1363, 1375–77 (Fed. Cir. 2010) (affirming waiver of arguments not raised until after remand).

Finally, Erbosan contends that Commerce's Federal Register notices in prior CVD proceedings support the application of a knowledge test. Pl.'s Cmts. at 11. Erbosan relies on Commerce's determinations in <u>Aluminum Extrusions from China</u> and <u>Wood Flooring from China</u>, arguing that these administrative reviews were rescinded based on Commerce's findings that these companies made no shipments to the United States in their respective PORs. <u>Id.</u> at 12. Erbosan contends that "Commerce's own language supports a knowledge test for U.S. sales in CVD proceedings, in that Commerce ties the reviewed company's actions to shipments to the United States." <u>Id.</u> Erbosan again argues

that Commerce must determine "whether the producer had knowledge of [subsequent third-party sales of its merchandise to the United States]" and maintains that without an agency determination as to whether a producer had that requisite knowledge, "Commerce cannot assume that subsidies were passed through to the exporter of subject merchandise." Pl.'s Cmts. at 13 (citing 19 U.S.C. § 1677(5)(B)). Beyond its naked citation to 19 U.S.C. § 1677(5)(B), Erbosan again fails to provide any persuasive reasoning that Commerce must use a knowledge test or conduct a "pass-through analysis" in applying 19 C.F.R. § 351.213(d)(3).

Erbosan also misapprehends Commerce's prior determinations in <u>Aluminum Extrusions from China</u> and <u>Wood Flooring from China</u>. As Commerce explained, its approach in conducting "no shipment" inquiries is to confirm with CBP "whether subject merchandise <u>produced and/or exported</u> by [the respondent seeking a no shipment certification] was imported into the United States during the POR." <u>Remand Results</u> at 19 (explaining that Commerce does <u>not</u> seek to confirm what company is "directly responsible for shipping subject merchandise"). As Commerce explained:

> Commerce's approach in the review at issue is the same approach it undertook in <u>Aluminum Extrusions from China</u>, in which Commerce explained that it issued its "no-shipments" message. Specifically, in that case, Commerce inquired with CBP as to whether aluminum extrusions from China had been "produced and/or exported" by firms at issue. We also note that Commerce rescinded the administrative review with respect to the no-shipment companies in <u>Aluminum Extrusions from China</u> because all requests to review those companies were timely withdrawn. Similarly, in <u>Wood Flooring from China</u>, Commerce's "no shipment" message to CBP inquired whether wood flooring from China had been "produced and/or exported" by the firms at issue.

> Thus, Commerce's approach in Aluminum Extrusions from China and Wood Flooring from China does not stand for the proposition that in CVD reviews Commerce determines non-shipment based on whether a company was directly responsible for shipping subject merchandise to the United States.

Id. at 19–20. Commerce's explanation reasonably describes why its no shipment certification analysis under § 351.213(d)(3) focuses objectively on confirming that the subsidized merchandise entered the United States during the POR, rather than on whether the exporter or producer under review had subjective knowledge of the reviewable entries of its merchandise.

## IV.    Conclusion

The court has already held that Commerce reasonably found that there were reviewable entries of subsidized subject merchandise from Erbosan during the POR. See Erbosan I, 42 CIT at ___, 358 F. Supp. 3d at 1375–76. In the Remand Results, Commerce has reasonably determined that knowledge is not relevant in a no shipment certification analysis under 19 C.F.R. § 351.213(d)(3). Accordingly, the court sustains the Remand Results. Judgment will be entered accordingly.

                                                    /s/ Leo M. Gordon
                                                 Judge Leo M. Gordon


Dated: September 20, 2019
        New York, New York